

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| RANI H. SAMUEL, | CIV. 07-4051 |
| Plaintiff, | |
| -vs- | |
| CITIBANK, N.A., LONG TERM DISABILITY PLAN, a/k/a Citigroup Long Term Disability Plan, | OPINION AND ORDER RE SUMMARY JUDGMENT MOTIONS (DOCS 46 & 47) |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending are cross motions for summary judgment (Docs. 46 & 47) and Citibank's Motion to Strike (Doc. 34) and Amended Motion to Strike (Doc. 55). Citibank's Amended Motion to Strike (Doc. 55) replaced the original motion to strike (Doc. 34). The original motion to strike (Doc. 34) is DENIED AS MOOT and the Amended Motion to Strike is GRANTED (Doc. 55).

## BACKGROUND

Rani Samuel claimed long term disability benefits (LTD) after being paid the maximum available short term disability benefits (STD). Her claim was denied because her orthopedic physician said she could return to work full time at her regular occupation. She appealed the decision. MetLife, the plan administrator, upheld the denial of her claim on appeal. Samuel then retained counsel who forwarded more medical information to MetLife. Her psychologist said she could not work. One of her medical doctors said she could not work in a situation like the situation in which she was employed at Citibank. MetLife referred the new medical information to Independent Physician Consultants for review and recommendation. MetLife again upheld the denial. This lawsuit followed.

There have been two previous decisions filed in the case, both about plaintiff's entitlement to discovery outside the administrative record (Docs. 23 & 41). Samuel's request for discovery outside the administrative record was initially denied (Doc. 23) and again denied upon her motion to reconsider (Doc. 41).

## JURISDICTION

Jurisdiction is established under the Employee Retirement Income Security Act (ERISA), particularly 29 U.S.C. §1132(a)(1)(B) and §1132(e). The parties consented to have the matter heard by a Magistrate Judge pursuant to 28 U.S.C. §636(c).

## CLAIMS OF THE PARTIES

### Samuel's Claims.

Samuel claims she was and remains totally disabled beginning February 3, 2006, as defined in Citibank's long term disability plan (LTD). She claims she was denied benefits which are due to her under the plan and that she has exhausted all her administrative remedies (Doc. 1). Samuel asserts there are no genuine issues about material facts and that she is entitled to judgment in her favor as a matter of law (Doc. 46). Samuel claims the plan administrator has a conflict of interest and that there were procedural irregularities. Specifically, Samuel asserts:

1. The failure to use standards of disability in the SPD (sic).
2. The use of standards not in the plan.
3. The failure to furnish standards to plaintiff in a timely way.
4. The abuse of office by the adjudicator on appeal by conducting his own investigation and ex parte contacts with an investigating nurse during the appeal process.
5. The misrepresentation to plaintiff that its physicians were independent.
6. The failure to provide rationale and interpretations that constitute a reasoned decision.
7. The failure to issue a final written decision on the evidence submitted and not letting the plaintiff first see and comment about the evidence considered..
8. The failure to issue a final decision on appeal that provides specificity.

9. The failure to show its doctors key evidence submitted by plaintiff.
10. The conflict of interest coupled with serious procedural irregularities.
11. The reliance on opinions of medical doctors who did not examine plaintiff and disregarding contradictory evidence from plaintiff's treating physicians.
12. The refusal to consider plaintiff's physical disability and psychological disability in combination.
13. The failure to explain why one medical opinion was more credible than another.
14. The reliance on conclusory medical opinions.

**Citibank's claims.**

Citibank asserts Rani Samuel was not functionally impaired from performing her sedentary job. It argues the denial of benefits must be reviewed under a deferential abuse of discretion standard which requires that any claim which is supported by substantial evidence must be upheld. According to MetLife the denial was supported by an independent physician review and a review of medical opinions and observations by plaintiff's own physicians. During the appeal time Samuel did not submit additional medical information supporting her appeal. The information submitted by plaintiff's counsel after the appeal period had lapsed was reviewed, but did not support her claim that she was functionally impaired from performing her job. MetLife asserts the new medical information submitted by Samuel after the appeal had been decided was considered by MetLife as a courtesy.

## UNDISPUTED FACTS[1]

The Form 35 Report describes Rani Samuel's disabling conditions as chronic pain, vocal chord pain, neck spasms, and upper extremity strength loss (Doc. 15).

Plaintiff Rani Samuel was employed by Citibank, N.A. ("Citibank") as a customer service representative which entailed answering telephone calls and working at her computer (SOF 2).

---

[1] These facts are found in Document 54, Samuel's responses and objections to MetLife's statement of undisputed facts. The citations refer to the paragraph numbers in the document— (SOF _).

Citibank has delegated full discretionary authority "to construe and interpret the provisions of the Plans" to the Claim Administrator which is Metropolitan Life Insurance Company (SOF 4). On November 4, 2005, Plaintiff was treated by Dr. Jeffrey Jenkins, a family practice physician who suggested that Plaintiff stay off work for two days for tendonitis in her left arm (SOF 5). MetLife approved STD benefits in December 2005 with extensions through the full 90 day period until February 2, 2006 (SOF 8). Plaintiff applied for LTD benefits on February 15, 2006, after the STD maximum was reached (SOF 12). Plaintiff appealed the denial of her LTD claim on March 29, 2006 (SOF 16). On May 3, 2006, MetLife contacted Plaintiff and asked if she was going to submit additional medical information or rely on information she had previously submitted. Plaintiff indicated that one of her doctors, Dr. Lisa Lafollette Ellis, was going to submit additional notes (SOF 17). Again on May 8, 2006, MetLife called Plaintiff to inquire if she was going to submit additional information, but she could not be reached (SOF 18). On May 10, 2006, Plaintiff advised MetLife that Dr. Ellis was supposed to send documents a "few weeks ago" (SOF 19). On May 18, 2006, MetLife informed Plaintiff that it still had not received documents (SOF 20). On May 26, 2006, MetLife received documents from Dr. Ellis. The documents consisted of exam notes dated March 3, 2006, and a letter dated March 30, 2006. Notwithstanding that MetLife had already issued its letter upholding denial, MetLife considered these documents, but determined that they did not affect the denial because they duplicated documents that Dr. Bailey had already reviewed (SOF 26).

## DISCUSSION

**Standard of Review.**

The deferential abuse of discretion standard of review applies to this review of MetLife's decisions. Review under the deferential standard is limited to evidence that was before the Plan Administrator. *Cash v. Wal-Mart Group Health Plan*, 107 F.3d, 637, 641 (8th Cir. 1997). Under the

abuse of discretion standard, "we look to see whether [the plan administrator's] decision was reasonable. In doing so, we must determine whether the decision is supported by substantial evidence, which is more than a scintilla, but less than a preponderance." *Willcox v. Liberty Life Assurance Co. Of Boston*, 552 F.3d 693, 699 (8th Cir. 2009)(internal citations omitted).

**The Administrative Record.**

<u>Overview</u>. The initial denial of the claim for LTD occurred on March 1, 2006. The initial denial was upheld on appeal on May 24, 2006. The dispute in this lawsuit relates to matters which occurred after May 24, 2006. Samuel was not represented by counsel until the appeal process had been completed. Although MetLife advised Samuel's counsel that the appeal process was finished, MetLife considered the new medical information counsel provided. MetLife referred the new medical information to an Independent Physician Consultant for review. MetLife's ongoing review of the claim continued from August, 2006, into January, 2007. MetLife did not change its mind about denying Samuel's claim. MetLife advised Samuel that she could submit new medical information by March 19, 2007, if she disagreed. The lawsuit followed.

The chronology of critical events is:

- **2006**

February 1– Samuel's own orthopedic physician, Dr. Suga, reports that she can return to work at her regular occupation full time without restrictions.

February 2—STD benefits expire.

March 1–initial denial of LTD benefits effective February 3 based on Dr. Schmidt's review of Dr. Suga's report after referral to him by MetLife..

May 11–Dr. Bailey, Board Certified in internal medicine & MetLife's second Independent Physician Consultant, reports Samuel's record does not document functional limitations that preclude sedentary work requiring use of a computer and telephone and interaction with clients.

May 24– on appeal, the initial denial of LTD is upheld and Samuel is advised by

MetLife that she has exhausted her administrative remedies.

August 14– counsel for Samuel sends new medical information, and some duplicate medical information, to MetLife and requests MetLife to reopen the appeal process.

post August 14, undated—MetLife in response to counsel's August 14 letter advises counsel the appeal process was finished earlier.

September— Dr. Hansen's records from June 5 through September 27 furnished. Dr. Hansen said it is not appropriate for Samuel to return now or at any time in the near future to any job that substantially involves static posture.

September 13– counsel provides MetLife a letter dated August 29 from Dr. Douglas Anderson indicating Dr. Anderson is a psychologist who had been treating Samuel on 12 occasions since May 25.

September 20– In Dr. Anderson's letter Samuel's psychological difficulties are connected to her chronic pain. He says she is not able to work.

September 22–MetLife refers Dr. Anderson's August 29 letter to a psychiatric clinical specialist, Dr. Ibsen, the third Independent Physician Consultant. Dr. Ibsen reports on September 29 saying the medical documentation does not support functional impairment based on psychiatric illness and recommends that the denial of LTD benefits should be upheld.

October 30– In Dr. Anderson's letter his diagnosis a major depressive disorder is reported.

December 18– Dr. Schroeder, Board Certified in Psychiatry & MetLife's fourth Independent Physician Consultant, reports Samuel's record does not document psychiatric illness.

Post December 27– Dr. Anderson responds to Dr. Schroeder's December 18 report after being provided the opportunity to do so by MetLife. Dr. Anderson says there is an obvious physical disability that makes any kind of normal work life unlikely.

●2007

January 25– Dr. Schroeder replies to Dr. Anderson's response to the December 18 Independent Physician Consultant Review. Dr. Schroeder says there is no impairment due to a mental disorder. Rather he says emotional distress and depression that are *"directly caused* by physical pain" are a "manifestation of a physical disorder." Dr. Schroeder also informed MetLife that assessment of impairment due to physical disorder is not within the scope of his expertise.

April 18–lawsuit filed.

6

The Administrative Record.

The administrative record (AR __) is comprised of 620 Bates stamped pages. Samuel was under the care of Dr. Bonnie Dillon (AR 59). She was seen by Dr. Suga who is an orthopedic doctor. (AR 59). Dr. Suga completed a form bearing his signature dated February 1, 2006 (AR 56-58). The form reveals that Samuel could return to work full time at her regular occupation without restriction (AR 56). A claims diary entry dated 02/06/2006 indicates the matter was referred to Dr. Schmidt who said the STD should be paid through 2/2/06 based on the medical information MetLife had, but that "new medical from specialist (Dr. Suga) does not support approval into LTD" (AR 24). On March 1, 2006, MetLife wrote to Rani Samuel saying that her claim has been denied effective February 3, 2006 (AR 534). The claims diary includes an entry on March 29, 2006, that the employee is requesting an appeal (AR 144). The parties agree there were multiple inquiries from MetLife to Samuel about the additional medical information for MetLife to consider on appeal.

Dr. Derrick Bailey, Board Certified in internal medicine, (AR 518) reviewed Rani Samuel's medical information and made a report entitled Physician Consultant Review dated May 11, 2006 (AR 514-518). He responded to the question: "Does the medical information in the claim file document functional limitations that preclude sedentary work requiring use of a computer and telephone and interaction with clients?" (AR 514). His answer was "no" (AR 514). He reviewed records from Dr. Suga, Dr. Jenkins, Dr. Dillon, Dr. Ellis and physical therapist Marit Dunkel, as well as diagnostic studies including MRIs (AR 514-518).

MetLife wrote to Rani Samuel on May 24, 2006, saying the review of the denial of her benefits had been completed (AR 511-512). The letter said, among other matters, "the original claim determination was appropriate" (AR 512). The letter also said "you have exhausted your

7

administrative remedies under the plan, therefore no further appeals will be considered" (AR 512).

On May 26, 2006, while Samuel was not yet represented by counsel, MetLife received documents from Dr. Ellis. The documents consisted of exam notes dated March 3, 2006, and a letter dated March 30, 2006. MetLife considered these documents, but determined that they did not affect the denial (AR 162-163) because Dr. Bailey's Independent Physician Consultant Review shows that he already had considered and discussed the same information in his May 24, 2006, consultation report which he wrote during the appeal process (AR 515).

About ten weeks later MetLife received a request to reopen her claim from counsel for Samuel. The request came by letter dated August 14, 2006 (AR 486-490). Enclosed with counsel's letter were:

1. A written statement by Rani Samuel. Though undated it reveals itself to be prepared for her lawyer after her appeal process was completed (AR 491-494).

2. A letter from Dr. John Beaumier to Dr. William Rossing dated October 2, 1997 (AR 495-498). Samuel was referred to Dr. Beaumeir by Dr. Douglas Dehaan. Dr. Beaumier diagnosed (1) myofascial pain involving the cervical, dorsal, and lumbar spine, (2) bilateral knee pain, musculoskeletal in nature, and (3) chronic pain syndrome associated with reactive depression.

3. A letter from Dr. LaFollette Ellis to MetLife dated March 30, 2006 (AR 499). This is the letter Dr. Bailey had already considered in his Independent Physician Consultation report (AR 515). Dr. LaFollette Ellis in the letter refers to excruciating neck pain for a number of years.

4. A letter from Dr. John Hansen to Rani Samuel dated July 30, 2006 (AR 500). Dr. Hansen in the letter said "it is not appropriate for you to return now or in the near future to any job that substantially involves static posture." Attached to Dr. Hansen's letter is his internal medical report which he dictated following his consultation with Rani Samuel on June 28, 2006 (AR 501-502).

Counsel asserted the grounds for appeal include that there was no medical evidence that Rani Samuel's condition changed at all except for the worse, but her LTD claim was denied even though

8

she had previously qualified for STD benefits (AR 489).[2]    MetLife responded in an undated letter by referring to receipt of counsels' letter of August 14, and by saying "we previously notified your client that she had exhausted her administrative remedies under the Plan" (AR 503).

Subsequently counsel for Samuel forwarded to MetLife (AR 504) a letter dated August 29, 2006, (AR 505-507) which had been sent to counsel for Samuel by a psychologist (Douglas Anderson) who had been seeing Rani Samuel for twelve sessions since May 25, 2006. The letter was sent by Douglas Anderson to counsel for Samuel in response to counsel's request for medical records (AR 505). Douglas Anderson wrote the letter to counsel instead of sending Samuel's records because "she is somewhat uncomfortable with her records being released" (AR 505). Douglas Anderson then discussed generally her pain and two diagnoses he was considering (AR 505-506).

On September 22, 2006, MetLife referred Dr. Anderson's August 29 letter to Dr. Ibsen, a MetLife psychiatric clinical specialist (167-171). On September 29, 2006, Dr. Ibsen reported Samuel "appears to be preoccupied with her physical symptoms and their limitations to her daily functioning" (AR 170). Dr. Ibsen recommended to uphold the denial because the "medical does not support a functional impairment based on a psychiatric illness" (AR 170-171).

On September 20, 2006, Dr. Anderson another letter to counsel for Samuel. The letter was provided to MetLife (AR 189, 474). Dr. Anderson expressed the opinion that Rani Samuel's chronic pain contributes to her depressive symptoms, and that a good deal of her psychological energy is committed to trying to manage her pain and discomfort.

On October 30, 2006, Dr. Anderson wrote that he had diagnosed a major depressive

---

[2]The change was Dr. Suga's February 1, 2006, (AR 58) report in which he said she could return to work full time at her regular occupation without restriction (AR 56).

disorder (AR 282).

Records from Dr. John Hansen bearing dates June 5, 2006 through September 27, 2006, were referred to Dr. Mark Schroeder for review by Psychiatric Clinical Specialist Elizabeth Gibson (AR 264-268). Dr. Schroeder is Board Certified in psychiatry (AR 268). Dr. Schroeder reviewed Dr. Anderson's and Dr. Hansen's reports in his December 18, 2006 review (AR 264-268). Dr. Schroeder observed that the information from Drs. Anderson and Hansen note Samuel's reports of depression and difficulty concentrating directly related to pain. Dr. Schroeder concluded, however, the medical information "does not substantiate the presence of psychiatric restrictions or limitations due to an independent psychiatric disorder by means of specific, detailed and objective mental health information." (AR 268).

MetLife gave Dr. Anderson an opportunity to respond to Dr. Schroeder's December 18 report. He did by undated letter (AR 275). Dr. Anderson received Dr. Schroeder's December 18 report from MetLife by facsimile on "12-27-06" (AR 275-276). Dr. Anderson's response was addressed to Betsy Ibsen at MetLife (AR 275). In his response Dr. Anderson expressed the opinion that "there appears to be an obvious physical disability that makes any kind of normal work life quite unlikely" (AR 275). He continued by saying "however, the official determination for a physical disability obviously lies with the medical profession and the reports of Ms. Samuel's physicians and physical therapists" (AR 275). He concluded his letter by saying "the fact that the severity of her depression is in some sense caused by her physical problems in no way reduces the psychological impact and disabling nature of her depression. Your conclusion confuses me, and I believe it needs to be reconsidered." (AR 276).

MetLife asked Dr. Schroeder to reply to Dr. Anderson's response. Dr. Schroeder replied in a report of January 25, 2007 (AR 242-245; duplicated at 256-258). This is the final medical

10

document in the record. In his reply Dr. Schroeder included and responded to quotations from Dr. Anderson's letter (AR 242-243; duplicated at 256-257). The specific question posed to Dr. Schroeder was whether "the claimant has *limitations based on a psychiatric illness* that would prevent her from performing the duties of her sedentary occupation as of 2/2/06?"[3] (AR 243, duplicated at 257)(italics supplied for emphasis). Dr. Schroeder's response was "it does not" (AR 243, duplicated at 257). Dr. Schrorder says "in summary additional information from Dr. Anderson does not support the presence of *psychiatric restrictions or limitations* (that were not directly related to pain from a physical disorder) as of 2/2/06" (AR 258)(italics supplied for emphasis).

**Analysis.**

This was a closed, black letter law case at the time MetLife upheld the initial denial on May 24, 2006. At the conclusion of the period of STD in early February, 2006, Samuel's own doctor, Dr. Suga, said she could return to work full time at her regular job with no restrictions. She appealed the decision, but submitted no new medical information to be considered on appeal. At the conclusion of the appeals process the initial decision to deny LTD benefits was upheld. There was substantial evidence (Dr. Suga's report) to support MetLife's decision. She was told that she had exhausted her administrative appeal process.

About ten weeks later counsel for Samuel sent MetLife new medical information. MetLife responded by saying the appeal is finished. As matters progressed, however, MetLife referred the new medical information to Independent Physician Consultants for their review and recommendation. Doing so reopened the appeal process. A plan administrator with the exclusive right and discretion to interpret, to rule on Plan language, and to determine coverage can extend the

---

[3]Importantly, this is a different question from the question which was posed to Dr. Bailey during the original appeal process.

11

appeal deadline. *Gugin v. J.C. Penney Company, Inc.*, 242 F.3d 374, 2000 WL 1728303 (8th Cir.).[4] In *Gugin* it was an abuse of discretion not to extend the appeal deadline. Parenthetically, it is not being suggested that it would have been an abuse of discretion for MetLife to refuse to extend the appeal deadline for Rani Samuel. It is merely being observed that Metlife did in fact extend the appeal process to accept, consider and invite[5] medical evidence after the appeal process was finished on May 24.

MetLife gave the additional medical documentation from Drs. Anderson (psychologist) and Hanson (M.D.) to a fourth Independent Physician Consultant, Dr. Mark Schroeder. Dr. Anderson said Samuel does not have the ability to function adequately in a work context (AR 474 & 266). Dr. Hansen said it is not appropriate for Samuel to return now or in the near future to any job that substantially involves static posture (AR 500). Dr. Schroeder responded specifically to this additional medical documentation and responded specifically to MetLife's question.

The problem is that the wrong question was asked and answered. MetLife's question to Dr. Schroeder directed his responses away from the Plan definition of disability for LTD. The issue is whether Rani Samuel was disabled from performing her own occupation. The question put to Dr. Schroeder was whether Ms. Samuel's *limitations are based on psychiatric illness* which would prevent her from performing the duties of her sedentary job. The question should have been the

---

[4]Pursuant to Eighth Circuit Rule 32.1A, unpublished opinions issued before January 1, 2007, have no precedential value and generally should not be cited. *Gugin* is cited here, however, because of its persuasive value, the similarity of its facts to the case at hand and no published opinion would serve as well.

[5]Dr. Anderson's response to Dr. Schroeder's December 18 report. The invitation is found at AR 263.

same question put to Independent Physician Consultant Derrick Bailey upon appeal:[6] "Does the medical information in the claim file document functional limitations that preclude sedentary work requiring use of a computer and telephone and interaction with clients?" (AR 514).

The summary description of the plan defines total disability "as a serious health condition ... that results in your inability to perform the essential duties of your regular occupation...." (AR 582). The STD summary definition for total disability carries over into the summary of the LTD Plan: You may be eligible to receive LTD benefits after 13 weeks of an approved STD. Benefits are paid . . . and continue for as long as your approved disability continues . . . . (AR 582).

> The actual definition of disability in the Plan:
>
> means that, due to sickness. . . or accidental injury, you are receiving appropriate care and treatment from a doctor on a continuing basis, and
>
> > 1. During your elimination period and the next 24 month period, you are unable to earn more than 80% of your predisability earnings at your own occupation for any employer in your local economy. . . .
>
> Own occupation means the activity that you regularly perform and that serves as your source of income. It is not limited to the specific position you held with your employer. It may be a similar activity that could be performed with your employer or any other employer.
>
> (AR 511).

The new medical information provided to MetLife during the extended appeal process includes documents from psychologist Dr. Douglas Anderson and medical doctor, Dr. John Hanson. In substance Dr. Anderson said Rani Samuel is unable to work at her regular job (AR 474 & 266)

---

[6]If not the same exact question, the issue is functional impairment. Whether March 13, 2009 functional impairment was the result of a psychiatric illness or a physical disorder is not the issue.

13

and her psychological difficulties are connected to her chronic pain (AR 474 & 267). Dr. Hanson said she should not work in a situation where her posture needs to be static (as it is in her job at Citibank) (AR 500). Dr. Schroeder accepted the pain complaints as authentic,[7] opined that pain could affect one's ability to work, and observed that while he found no psychiatric illness, the assessment of an impairment directly due to pain is outside his medical expertise. Because Dr. Schroeder said Rani Samuel's *limitations are not based on psychiatric illness* which would prevent her from performing the duties of her sedentary job, MetLife upheld the initial decision and the decision on appeal to uphold the initial decision.

Comments in Dr. Schroeder's report reveal that he focused on the psychiatric aspect of Rani Samuel's condition as contrasted with the pure question about her ability to perform the regular duties of her sedentary occupation. He said "that symptoms such as distractibility or emotional distress and depression that are *directly caused* by physical pain should be regarded as a

---

[7]In Dr. Schroeder's December 18 report he mentions a summary report of Dr. Hansen dated October 30 (AR 266), but on the next page of his report mentions summaries including October 30 as being those of Psychotherapist Dr. Anderson. An October 30, 2006, letter from Dr. Anderson is in the record (AR 282). Whether it is Dr. Hansen or Dr. Anderson, Dr. Schroeder quotes "I do not see her as having the ability to function adequately in a work context at this time" (AR 266). Dr. Schroeder continued by saying "the doctor diagnosed major depressive disorder, . . . and opined that the employee could not work" (AR 266). Dr. Schroeder also said "on 9/20/06 the doctor stated that 'I do believe her psychological difficulties at this moment are connected to her chronic pain, and if her chronic pain were to be sufficiently reduced, she would be able to [return to work].'" (AR 266, brackets in original). Finally, Dr. Schroeder concluded "Dr. Anderson credibly documented that the employee suffered from a major depressive disorder, and that she had psychological difficulties related to chronic pain" (AR 267). Dr. Schroeder's further analysis illustrated that the chronic pain which produces depression does not constitute a mental disorder (AR 267). Dr. Schroeder's ultimate conclusion is that the record "did not document severe observed signs of psychiatric illness . . . " (AR 267).
The point is that Dr. Schroeder addressed the issue about the existence of psychiatric illness and concluded psychiatric illness was not documented in the record. He did not address the issue about Rani Samuel's functional impairment to perform the regular duties of her job except to say that assessment falls outside of his expertise. On the other hand, he did identify medical documentation that Rani Samuel could not work.

14

manifestation of a physical disorder causing the pain, and not as an impairment due to a mental disorder" (AR 243, duplicated at 257). Then he acknowledged "that direct effects of pain such as distractibility, emotional distress and depression could affect ability to work." (Id.) He concluded with the important observation "that assessment of impairment directly due to a physical disorder is outside the scope of expertise of the psychiatric reviewer." (Id.)

MetLife was selective about the medical condition to be addressed. MetLife ignored the medical information that a combination of pain and depression could prevent Rani Samuel from performing the duties of her sedentary job. The focus shifted to psychiatric illness. The focus shifted away from the ultimate issue, i.e. whether Rani Samuel was functionally impaired as a result of accident or sickness from performing the duties of her sedentary job. Dr. Schroeder responded to the specific question about Rani Samuel's *limitations as being based on psychiatric illness*. The result of shifting the focus of inquiry to psychiatric illness was a selective review of the medical evidence, together with the result that relevant evidence was ignored, i.e. the chronic pain, the pain induced depression and the resulting functional impairment, if any, caused by that combination. Selective review of medical evidence and ignoring relevant evidence constitute abuse of discretion. *Willcox v. Liberty Life Assurance Company of Boston*, 552 F.3d 693, 701-702 (8th Cir. 2009) citing *Metropolitan Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir 2007) and *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 885 (8th Cir. 2002).

Dr. Schroeder referred to Dr. Anderson's credible findings of chronic pain and major depression related to pain. MetLife ignored relevant medical evidence about Rani Samuel's ability to perform the duties of her job when it did not address whether Rani Samuel's was functionally impaired from performing the duties of her sedentary job (her own occupation) and instead addressed whether her *limitations were based on psychiatric illness*. The issue is whether Rani

15

Samuel is functionally impaired. The issue is not whether she suffers from a psychiatric illness. Having already determined in his December 18, 2006, report that a psychiatric illness was not documented in the record, Dr. Schroeder in his January 25, 2007, report said that assessment of an impairment directly due to a physical disorder is outside the scope of his expertise. MetLife did not ask anyone who was qualified to make the assessment to review Dr. Anderson's and Dr. Hansen's reports and to answer the question previously posed to Dr. Bailey. The question posed to Dr. Bailey is the same question which needs to be asked and answered in connection with the opinions of Dr. Anderson and Dr. Hansen. The opinions of Dr. Anderson and Dr. Bailey were rejected by MetLife based upon their conclusion that Samuel's limitations were not the result of a psychiatric illness.

MetLife could have submitted the question about Samuel's functional impairment due to a physical disorder to a doctor who did have the expertise to assess Samuel's impairment for an Independent Physician Review. MetLife had previously done exactly that in May, 2006, when Dr. Bailey's assessment was accomplished during the original appeal process. The same question[8] which was posed to Dr. Bailey in the original appeal process needs to be answered again in connection with the new medical documentation furnished to MetLife during the reopened appeal process. MetLife (1) has reopened the appeal process, (2) has received medical documentation that Rani Samuel's chronic pain and depression functionally impairs her from performing the regular duties of her own occupation, and (3) has been told by their Independent Physician Consultant that there is no psychiatric illness, but that the assessment of Samuel's impairment due to physical disorder is not within his expertise. The status of Samuel's claim is that MetLife knows the cause of her functional impairment is not psychiatric illness, but the extent of her functional impairment

---

[8] As contrasted with the question put to Dr. Schroeder.

16

has not been assessed by MetLife's Independent Medical Consultant. Dr. Anderson and Dr. Hansen have expressed opinions that she cannot perform the functions of her regular job.

"It is well settled that in ERISA cases a reviewing court may not substitute its own weighing of the evidence for that of the administrator." *Willcox* at 702 citing *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002)(internal quotation marks and brackets omitted). The administrative record reveals MetLife selectively reviewed the medical documentation in the record (existence of psychiatric illness) but failed to decide whether the medical evidence in the record supported Samuel's claim that she could not work at her own occupation (Dr. Anderson and Dr. Hansen). It is for MetLife to decide based on the documents already in the administrative record, either with or without the assistance of additional Independent Physician Consultation, whether Rani Samuel is functionally impaired from performing the regular duties of her own occupation.

"A reviewing court must remand a case when the court or agency fails to make adequate findings or explain the rationale for its decision. This remedy is appropriate in ERISA cases." *Abram v Cargill, Inc.*, 395 F.3d 882, 887 (8th Cir. 2005)(internal citations omitted)[9]. MetLife has failed to make adequate findings, i.e. whether Rani Samuel is functionally impaired from performing the regular duties of her own occupation in connection with the additional medical information which was provided to MetLife during the extended appeal process.

### METLIFE'S AMENDED MOTION TO STRIKE (DOC. 55)

MetLife moved to strike from the record to be reviewed (1) a letter dated October 16, 2006, from counsel for Samuel which was the subject of MetLife's original motion to strike (Doc. 34), (2)

---

[9]*Abram*, like Samuel, is a case where a combination of medical conditions was claimed to be disabling in a claim for LTD benefits under an ERISA plan.

certain medical records except one appearing at AR97-98, and (3) plaintiff's affidavit. The motion is GRANTED.

## CONCLUSION AND ORDER

It is appropriate to remand the case to MetLife because MetLife failed to make adequate findings to address whether Rani Samuel is functionally impaired from performing the regular duties of her own occupation in connection with the additional medical information which was provided to MetLife during the extended appeal process. MetLife needs to make adequate findings to determine whether due to sickness or accidental injury, Rani Samuel is receiving appropriate care and treatment from a doctor on a continuing basis, and during her elimination period and the next 24 month period, she is unable to earn more than 80% of her predisability earnings at her own occupation from any employer in her local economy. Her own occupation means the activity that she regularly performs and that serves as her source of income.

It is **ORDERED** that:

1. The case is REMANDED to the Plan Administrator, MetLife, for further administrative review and to answer the question, either with or without the assistance of an Independent Physician Consultant Review at the option of MetLife:

    Does the medical information in the claim file document functional limitations that preclude sedentary work requiring use of a computer and telephone and interaction with clients?

    In the event that MetLife refers the matter to an Independent Physician Consultant for further review, then Rani Samuel's Psychologist Anderson and Physician Hansen shall be provided an opportunity to respond to the report of MetLife's Independent Physician Consultant, following which MetLife's Independent Physician Consultant may reply to Rani Samuel's Psychologist and Physician.

2. This action is **STAYED** pending a final decision by MetLife. Within 30 days after a final decision by MetLife the parties may move to lift the stay and renew their dispositive motions based solely on the administrative record as supplemented by

medical information as described in this Order. If neither party timely moves to lift the stay, the case will be dismissed. Within 10 days after MetLife's decision counsel for MetLife shall notify the Court of the date of MetLife's decision.

3. The cross motions for summary judgment (Docs. 46 & 47) are DENIED without prejudice

4. That the Amended Motion to Strike (Doc. 55) is GRANTED. The original Motion to Strike (Doc. 34) which was replaced by the Amended Motion to Strike is DENIED AS MOOT.

Dated this 13 day of March, 2009.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge